UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| CHARITA JACKSON, individually and on behalf of all others similarly situated, | ) ) ) | |
| Plaintiff, | ) ) | CIVIL ACTION NO. |
| VS. | ) ) | 3:07-CV-1706-G |
| FIDELITY NATIONAL TITLE INSURANCE COMPANY, | ) ) ) ) | **ECF** |
| Defendant. | ) | |

## MEMORANDUM OPINION AND ORDER

Before the court are the following: (1) the motion of the defendant, Fidelity National Title Insurance Company ("FNTIC"), to dismiss the claim of the plaintiff, Charita Jackson ("the plaintiff" or "Ms. Jackson"), under the Real Estate Settlement Procedures Act, 12 U.S.C. § 2607(b) ("RESPA"); (2) the motion of the plaintiff to amend her original complaint and add John Jackson as a plaintiff; and (3) FNTIC's motion for leave to file a surreply. For the reasons stated below, the motion to dismiss is granted, the motion to amend is denied, and the motion for leave is denied as moot.

## I. BACKGROUND

In November of 2006 the plaintiff's father, John Jackson, refinanced a loan for their joint residence. *See* Brief in Support of Fidelity National Title Insurance Company's Motion to Dismiss ("Motion to Dismiss") at 2; *see also* Loan Application, *attached to* Appendix for Fidelity National Title Insurance Company's Motion to Dismiss ("Defendant's Appendix") at 6-10. In connection with the loan, Mr. Jackson was required to obtain title insurance. The plaintiff complains that the premium Mr. Jackson paid exceeded the rate permitted by Texas law. *See* Complaint ¶ 17. The plaintiff, however, was not a borrower with respect to the loan, nor did she provide any money for the refinancing transaction. *See* Motion to Dismiss at 2; Loan Application. The plaintiff did, however, sign various loan documents in a "pro forma" status to perfect existing lien information for the joint residence. *See* Motion to Dismiss at 2-3; Defendant's Appendix at 2, 16.

The plaintiff seeks relief under the RESPA, 12 U.S.C. § 2607(b). The plaintiff also brings causes of action for money had and received and for unjust enrichment. *See generally* Complaint. Additionally, the plaintiff seeks to be appointed the representative of a class of all persons who refinanced or otherwise replaced their existing mortgage and were charged a premium for title insurance issued by the defendant. *See* Complaint ¶ 18.

In its motion to dismiss, FNTIC argues that the plaintiff, Ms. Jackson, lacks standing to sue, and that as a result the court lacks subject matter jurisdiction. Motion to Dismiss at 4-7. Specifically, FNTIC argues the plaintiff has suffered no injuries that are fairly traceable to the actions of FNTIC, and furthermore that no action of the court will redress Ms. Jackson's alleged injuries. *Id.* Additionally, FNTIC argues that any claims have been rendered moot by its tender of the amount Ms. Jackson claims FNTIC overcharged for the policy. *Id.*

## II. ANALYSIS

### A. Rule 12(b)(1) Subject Matter Jurisdiction

Article III of the United States Constitution limits federal courts' jurisdiction to "cases" and "controversies." U.S. Const. Art. III § 2. Standing -- *i.e.*, the need to show that the plaintiff has a direct, personal stake in the outcome of the suit -- is an "essential and unchanging part" of this case-or-controversy requirement. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992). "The federal courts are under an independent obligation to examine their own jurisdiction, and standing is perhaps the most important of [the jurisdictional] doctrines." *United States v. Hays*, 515 U.S. 737, 742 (1995) (quoting *FW/PBS, Inc. v. Dallas*, 493 U.S. 215, 230-231 (1990)) (internal quotation marks omitted); see also *Sommers Drug Stores Company Employment Profit Sharing Trust v. Corrigan*, 883 F.2d 345, 348 (5th Cir. 1989) ("'Standing, since it goes to the very power of the court to act, must exist at all stages of the proceeding,

and not merely when the action is initiated or during an initial appeal.'") (quoting *Safir v. Dole*, 718 F.2d 475, 481 (D.C.Cir. 1983), *cert. denied*, 476 U.S. 1206 (1984)); *University of South Alabama v. American Tobacco Company*, 168 F.3d 405, 410 (11th Cir. 1999) (noting that "it is well settled that a federal court is obligated to inquire into subject matter jurisdiction *sua sponte* whenever it may be lacking."). As the Supreme Court explained in *Lujan*, the "irreducible constitutional minimum of standing" has three elements:

> First, the plaintiff[s] must have suffered an "injury in fact" -- an invasion of a legally protected interest which is (a) concrete and particularized, and (b) "actual or imminent, not 'conjectural' or 'hypothetical.'" Second, there must be a causal connection between the injury and the conduct complained of -- the injury has to be "fairly . . . trace[able] to the challenged action of the defendant, and not . . . th[e] result [of] the independent action of some third party not before the court." Third, it must be "likely," as opposed to merely "speculative," that the injury will be "redressed by a favorable decision."

504 U.S. at 560 (internal citations and footnote omitted).

Lack of standing is a defect in subject matter jurisdiction. See *Haase v. Sessions*, 835 F.2d 902, 906 (D.C. Cir. 1987) (citing *Bender v. Williamsport Area School District*, 475 U.S. 534, 541 (1986)); see also *Corrigan*, 883 F.2d at 348 ("standing is essential to the exercise of jurisdiction, and . . . lack of standing can be raised at any time by a party or by the court.") (citing *United States v. One 18th Century Colombian Monstrance*, 797 F.2d 1370, 1374 (5th Cir. 1986), *cert. denied*, 481 U.S. 1014 (1987)).

Federal district courts have the unique power to make factual findings which are decisive of subject matter jurisdiction. See *Williamson v. Tucker*, 645 F.2d 404, 413 (5th Cir. 1981) (citing, among other authorities, *Land v. Dollar*, 330 U.S. 731, 735 n. 4 (1947)), *cert. denied*, 454 U.S. 897 (1981). The district court has the power to dismiss for lack of subject matter jurisdiction -- and thus for lack of standing -- on any one of three separate bases: "(1) the complaint alone; (2) the complaint supplemented by undisputed facts evidenced in the record; or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts." *Williamson*, 645 F.2d at 413; *Robinson v. TCI/US West Communications Inc.*, 117 F.3d 900, 904 (5th Cir. 1997); see also *Haase*, 835 F.2d at 907 (noting that, to the extent the assessment of a plaintiff's standing turns on factual evidence, a court may consider all matters developed in the record at the time of its decision).

Moreover, while the burden is on the party seeking to invoke the federal court's subject matter jurisdiction to establish the requisite standing requirements, that burden need be met only by a preponderance of the evidence. See *Hartford Insurance Group v. Lou-Con Inc.*, 293 F.3d 908, 910 (5th Cir. 2002).

### 1. *The Plaintiff Suffered No Injury in Fact*

FNTIC's primary argument is that Ms. Jackson has not suffered the injuries alleged. *See* Motion to Dismiss at 5. FNTIC notes that, because the plaintiff "did not pay any money toward the title insurance policy, . . . she could not have been

overcharged for it." *Id.* FNTIC cites *Kazprzak v. American General Life & Accident Insurance Company*, 942 F.Supp. 303 (E.D. Tex. 1996), to support its argument. In *Kazprzak*, the plaintiffs in a purported class action filed suit against their insurance company, alleging that the company made false representations in connection with the sale of certain life insurance policies. *Id.* However, "[a]s it turned out, the plaintiffs never purchased a . . . policy from [the defendant]." *Id.* at 305. Therefore, "the injury which the plaintiffs allege in their pleadings was not in fact suffered by the plaintiffs." *Id.* In the instant case, Ms. Jackson finds herself in a similar situation.

In response to FNTIC's argument, Ms. Jackson notes that "numerous closing documents" identify her as a "borrower" and that "[d]efendant's documents *suggest* that Ms. Jackson was a borrower." *See* Plaintiff's Response at 1, 4 (emphasis added). Additionally, the plaintiff seeks to establish Ms. Jackson's standing through events subsequent to the underlying title insurance transaction. Specifically, the plaintiff contends that "[FNTIC] admitted that it overcharged Plaintiff" and that FNTIC treated Ms. Jackson like one of its customers. *Id.* at 3. However, as FNTIC points out, any amount tendered to Ms. Jackson in no way establishes her standing for the purposes of this lawsuit, as FNTIC specifically noted in its "Tender Letter" that by "agree[ing] to compensate Ms. Jackson, . . . it does not admit any legal liability by doing so." *See* Defendant's Appendix at 80.

Ultimately, none of the plaintiff's theories supports standing in this suit.* Ms. Jackson has failed to establish an injury in fact. The record clearly demonstrates that Mr. Jackson is the sole signatory on the promissory note, and therefore it is Mr. Jackson who meets the standing requirements. The court next turns to the plaintiff's motion to amend and add Mr. Jackson as a plaintiff.

B. Motion to Amend

The plaintiff argues that "[l]eave to add Mr. Jackson is appropriate under the largely overlapping standards set forth in Rules 15, 21, 23 and 24 . . . and accompanying judicial opinions." *See* Memorandum in Support of Plaintiff's and John Jackson's Joint Motion for Leave to Amend Complaint to add Plaintiff John Jackson ("Motion to Amend") at 2. However, none of the Rules cited by the plaintiff can cure the underlying deficiency -- without standing to bring suit, the plaintiff lacks the power to bring in a new plaintiff and continue the litigation.

The Fifth Circuit addressed a situation analogous to the instant case in *Summit Office Park v. United States Steel Corporation*, 639 F.2d 1278 (5th Cir. 1981). In

---

* The plaintiff has submitted supplemental authority to the court, noting the recent decision in a similar case, *Hancock v. Chicago Title Insurance Company*, No. 3:07-CV-1441-D (N.D. Tex. Feb. 5, 2008) (J. Fitzwater), and arguing that based on the reasoning in *Hancock*, this case should not be dismissed for lack of standing. The cases are distinguishable, however. In *Hancock*, the two parties disputed whether or not the plaintiff was overcharged, not whether the plaintiff was, in fact, the one who purchased the title insurance policy. Here, the documentation presented in the defendant's appendix makes it clear that Ms. Jackson did not purchase the policy, eliminating any question of fact as to whether Ms. Jackson suffered a injury sufficient to satisfy the requirements of Article III standing.

*Summit Office Park*, the court stated that where a plaintiff never had standing to assert a claim against the defendant, it does not have standing to amend the complaint and control the litigation by substituting new plaintiffs, a new class, or a new cause of action. *Id.* at 1282-83; see also *Federal Recovery Services, Inc. v. United States*, 72 F.3d 447, 453 (5th Cir. 1995) (holding that the plaintiff could not cure a jurisdictional defect using Rule 15 to substitute a new plaintiff); *Bhandari v. Cadence Design Systems, Inc.*, 485 F.Supp.2d 747, 750 (E.D. Tex. 2007) (holding that named plaintiff lacked standing to sue and also to amend complaint where the rights in the patent at issue had been assigned to a nonparty).

In *Summit*, an indirect purchaser of materials, had filed an antitrust suit against manufacturers of reinforced steel bars. After the filing of the suit, but before the case was tried, the United States Supreme Court announced its decision in *Illinois Brick Company v. Illinois*, 431 U.S. 720 (1977), in which the Court stated that indirect purchasers of material had no standing to assert antitrust claims. *Id.* Summit then attempted to amend its original complaint to name a restructured class limited to direct purchasers only. *Id.* The Fifth Circuit held that since Summit had no standing to assert the claim, it had no standing to create a new lawsuit for new plaintiffs. The court stated: "A pleading which abandons the original plaintiff and class and asserts new claims upon which the original plaintiff and class could not recover, has the characteristics of a new lawsuit rather than an amended complaint." *Id.* at 1284.

Because there is no subject-matter jurisdiction, Ms. Jackson has no ability to assert a claim under the insurance policy against FNTIC. As a result, as in *Summit*, Mr. Jackson's claims cannot, under the guise of an amended complaint, enter through the back door of Ms. Jackson's failed attempt at establishing jurisdiction in this suit.

III. CONCLUSION

For the reasons set forth above, the defendant's motion to dismiss is **GRANTED**, and the plaintiff's motion to amend is **DENIED**. FNTIC's motion for leave to file a surreply is **DENIED** as moot.

**SO ORDERED**.

February 26, 2008.

_____
**A. JOE FISH**
**Senior United States District Judge**